KELLY E. DUFORD, State Bar No. 295646
*kedwilliams@slatelawgroup.com*
MICHAEL H. WEINER, State Bar No. 269069
*mhweiner@slatelawgroup.com*
SLATE LAW GROUP
2131 Third Ave
San Diego, CA 92101
Ph: (619) 546-4291
Fax: (619) 354-2449

Attorneys for Plaintiff LAURA SWIRSKI

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA SWIRSKI, an individual, | Case No.: **'20CV1321 LAB MDD** |
| Plaintiff, | **COMPLAINT FOR** |
| vs. | **1.** **Age Discrimination ADEA Violation – [29 U.S.C. § 621]** |
| PROTEC BUILDING SERVICES, INC., a California corporation; and DOES 1 to 100, inclusive, | **2.** **Age Discrimination FEHA Violation – [Cal. Gov. Code § 12940]** |
| Defendants. | **3.** **Hostile Work Environment Title VII Violation – [42 U.S.C. § 2000(e)]** |
| | **4.** **Hostile Work Environment FEHA Violation – [Cal. Gov. Code § 12940]** |
| | **5.** **Retaliation Title VII Violation – [42 U.S.C. § 2000(e)]** |
| | **6.** **Retaliation FEHA Violation – [Cal. Gov. Code § 12940]** |
| | **7.** **Wrongful Discharge in Violation of Public Policy** |
| | **8.** **Failure to Prevent Retaliation FEHA Violation – [Cal. Gov. Code § 12940]** |

9. **Failure to Prevent Harassment FEHA Violation – [Cal. Gov. Code § 12940]**
10. **Unfair Business Practices – [Cal. Bus. & Prof. Code § 17200]**
11. **Intentional Infliction of Emotional Distress**
12. **Negligent Infliction of Emotional Distress**

**DEMAND FOR JURY TRIAL**

Plaintiff LAURA SWIRSKI (hereinafter "Ms. Swirski" or "Plaintiff"), an individual, alleges against Defendant PROTEC BUILDING SERVICES, INC. (hereinafter "ProTec" or "Defendant"), a California corporation headquartered in San Diego; and DOES 1 to 100, inclusive, the following upon personal knowledge as to her own acts, and upon information and belief, based on the investigation conducted by her counsel, as to all other allegations:

## INTRODUCTION

Ms. Swirski files this lawsuit against ProTec for ProTec's intentional and discriminatory conduct towards Ms. Swirski simply because of her age. ProTec made disrespectful and harassing statements about Ms. Swirski's age in front of ProTec's executive team members in order to force Ms. Swirski into early retirement. ProTec executive team members alluded to Ms. Swirski's employment at ProTec nearing the end because of her age, in both private emails and public forums. Ms. Swirski had no plans to retire and would have loved to stay at ProTec if she was not continuously subjected to harassment based on her age, if the work environment was not hostile, and if ProTec took immediate corrective action. After Ms. Swirski's constructive termination, ProTec posted a job opening on LinkedIn for Ms. Swirski's position, offering a salary of eighty- to one hundred-thousand

dollars, which was a much higher range than Ms. Swirski's salary at ProTec despite her twenty-eight years of experience in human resources. ProTec's harassment and unlawful conduct constitutes discrimination, violates federal and California law, and caused and continues to cause Ms. Swirski substantial harm.

## PARTIES

1.  Plaintiff LAURA SWIRSKI is, and at all times relevant to this Complaint, was an individual and resident of San Diego County, California.

2.  Defendant PROTEC BUILDING SERVICES, INC. is, and at all times relevant to this Complaint, was a California corporation, doing business in San Diego County, California through its corporate office located at 10180 Willow Creek Road, San Diego, California 92131.

3.  At all times relevant to this Complaint, Defendant ProTec is and was the "employer" of Plaintiff, as such term is defined under Title VII of the Civil Rights Act of 1964 § 2000(e).

4.  Defendants DOES 1 to 100 are, and at all times relevant to this Complaint, were employees, agents, and/or members of the Board of Directors of ProTec. Ms. Swirski is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 to 100, inclusive, and therefore sues these Defendants by such fictitious names. Ms. Swirski will pray leave of this Court to amend this Complaint to allege the DOE Defendants' true names and capacities when ascertained.

5.  Ms. Swirski is informed and believes, and thereon alleges, that each of the Defendants herein was, at all times relevant to this action, the agent, employee, representing partner, or joint venturer of the remaining Defendants and was acting within the course and scope of that relationship. Ms. Swirski is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants.

## JURISDICTION AND VENUE

6.     This United States District Court, Southern District of California, has original jurisdiction under the Age Discrimination Employment Act found in 29 U.S.C. § 621 and Title VII of the Civil Rights Act of 1964 found in 42 U.S.C. § 2000, and their applicable regulations described in this Complaint.

7.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for claims under the Fair Employment and Housing Act found in California Government Code § 12940, *et seq*., Business and Professions Code § 17200, and their implementing regulations described in this Complaint.

8.     This Court has personal jurisdiction over Defendant ProTec because all acts or omissions by Defendant ProTec with respect to one or more causes of action, as well as Ms. Swirski's injuries arising from these acts or omissions, occurred in the County of San Diego, State of California.

9.     This Court has personal jurisdiction over Defendants DOES 1 through 100, inclusive, because they were acting within the course and scope of their employment for Defendant ProTec in the County of San Diego, State of California, when Plaintiff's injuries occurred.

10.     Under 28 U.S.C. § 1391, venue is proper in this District because Plaintiff is a resident of San Diego, California and was an employee of Defendant ProTec in San Diego, California.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.     Prior to commencing this civil action and within the time provided by law, Plaintiff filed an administrative charge with the Equal Opportunity Commission ("EEOC") and the California Department of Fair Employment and Housing ("DFEH").

12.     On May 15, 2020, Ms. Swirski requested a "Right-to-Sue" letter from the EEOC regarding Plaintiff's federal claims.

13.     On July 10, 2020 Ms. Swirski received a "Right-to-Sue" letter from

the EEOC regarding Plaintiff's federal claims. (A true and accurate copy of the EEOC Right-to-Sue letter is attached and incorporated by reference as Exhibit A.)

14.     On May 15, 2020, Ms. Swirski requested and received a "Right-to-Sue" letter from the DFEH regarding Plaintiff's state law claims. (A true and accurate copy of the DFEH Right-to-Sue letter is attached and incorporated by reference as Exhibit B.)

## FACTUAL BACKGROUND

### Plaintiff's Employment History with Defendant

15.     Ms. Swirski turned forty years old on March 10, 2000.

16.     In January 2014, at the age of fifty-three, Ms. Swirski began her employment at ProTec as its Human Resources Manager.

17.     Ms. Swirski was employed by and worked for ProTec from approximately January 2014 until on or about November 8, 2019.

18.     Throughout Ms. Swirski's entire employment at ProTec she remained part of its five-member executive team.

19.     The five-member executive team consisted of Ms. Swirski, as the Human Resources Manager; a Chief Financial Officer, Candice Allen ("Ms. Allen"); President and Chief Executive Officer, Dave Rauch ("Mr. Rauch"); Director of Operations, Mark Adams ("Mr. Adams"); and Business Development Manager and/or Vice President of Operations, Andy Henley ("Mr. Henley").

20.     Ms. Swirski has exceptional experience as a Human Resources Manager as she holds a PhD in Psychology from the United States International University, and a Master of Arts and Bachelor of Arts in Psychology from San Diego State University.

21.     Ms. Swirski also has twenty-eight years of work experience in human resources.

22.     Ms. Swirski has exceeded in performing her duties as ProTec's Human Resources Manager.  Her duties included but were not limited to the

following:

    a. Working closely with ProTec's employment attorney regarding former employee legal claims against ProTec;

    b. Promoting team morale throughout ProTec, often by sending inspirational quotes; and

    c. Handling employee complaints relating to an abundance of issues, including but not limited to sexual harassment claims against other ProTec employees.

23. At no time during Ms. Swirski's employment with ProTec had she been notified of any issues regarding her professionalism or performance as a Human Resources Manager.

24. Ms. Swirski played an instrumental role in ProTec's growth from a company with approximately 200 employees to approximately 400 employees.

25. Ms. Swirski even received confirmation of her exceptional work near her five-year anniversary of working at ProTec.

26. In approximately early 2019, after five years of working for ProTec, Plaintiff received a certificate of appreciation, which was signed by Mr. Henley himself.

<u>ProTec's Inappropriate Misconduct</u>

27. Ms. Swirski had no intention of retiring from ProTec.

28. Ms. Swirski was subjected to a hostile work environment at ProTec.

29. Ms. Swirski was subjected to harassment by ProTec executive members due to her age, and nothing was done by ProTec to correct their inappropriate behavior.

30. On August 2, 2016, as part of Plaintiff's job, Ms. Swirski circulated via email an inspirational quote from Andy Stanley, to all of ProTec's leaders as she regularly did, stating that "leaders who don't listen will eventually be surrounded by people who have nothing to say."

31.     That same day, ProTec's President and Chief Executive Officer, Mr. Rauch, responded to Ms. Swirski's email, including Mr. Henley in the email, assuming that it was directed at him.

32.     Mr. Rauch further insinuated that Ms. Swirski was "crying out for something," wanted attention, and that "Coworkers who don't listen to (and do) what their boss asks them to do will soon be looking for another job."

33.     Mr. Rauch's inappropriate email was not meant to be sent to Ms. Swirski but instead was meant solely for Mr. Henley.

34.     After Mr. Rauch inadvertently sent Ms. Swirski the August 2, 2016 email, Ms. Swirski requested that he speak with her privately about his concerns.

35.     Ms. Swirski informed Mr. Rauch that, based on his comments in his email intended for Mr. Henley, she felt that her employment was threatened.

36.     Ms. Swirski further informed Mr. Rauch that she was uncomfortable and felt threatened because she did not know if he was saying additional negative things about her to other co-workers.

37.     Despite raising her concerns to Mr. Rauch, no actions were taken to mitigate his inappropriate behavior.

38.     This instance was not the only harassing conduct by ProTec's executive team members that contributed to Ms. Swirski's intolerable work environment at ProTec.

39.     Specifically, for the substantial duration of Ms. Swirski's employment at ProTec, Mr. Rauch regularly referred to Ms. Allen as his work wife when speaking to Ms. Swirski.

40.     Ms. Swirski told Mr. Rauch that this notation was inappropriate and gave the wrong impression to her and the rest of his employees.

41.     Despite the warning, Mr. Rauch ignored Ms. Swirski and continued to make those remarks.

42.     One month after Mr. Rauch inadvertently sent Ms. Swirski the

inappropriate and disrespectful email, Ms. Swirski received a raise.

43.     Part of Ms. Swirski's duties as Human Resources Manager was to deal with sexual harassment and other employee-related complaints, including but not limited to former employee allegations against ProTec executive members and communicating with ProTec's employment attorney, Mike Drenan ("Mr. Drenan") regarding formal allegations against ProTec.

44.     Part of Ms. Swirski's job duties as Human Resources Manager was to be the main point of contact with ProTec's employment attorney, Mr. Drenan.

45.     One particular complaint ProTec received was from an employee alleging sexual harassment and fraud against ProTec.

46.     On August 29, 2019, Mr. Drenan requested several documents from ProTec to evaluate and attempt to settle these allegations.

47.     In response, Mr. Rauch undermined Ms. Swirski by including Ms. Allen on emails pertaining to documents and information requested from Mr. Drenan, even though it was Ms. Swirski's responsibility.

48.     On August 29, 2019, in response to Ms. Allen's and Mr. Rauch's interference with Ms. Swirski's inability to perform her job duties, Ms. Swirski sent an email asking Ms. Allen and Mr. Rauch to stay in their own lanes with regards to their job duties.

49.     That same day, Mr. Rauch responded stating that they were all staying in their own "lanes" and that he added Ms. Allen to the emails because he did not believe that Ms. Swirski had the same opinions on how to settle the lawsuit by ProTec's former employee.

50.     In his August 29, 2019 email to Ms. Swirski, Mr. Rauch stated he did not believe that Ms. Swirski had the same level of concern about not spending close to six figures to settle the lawsuit.

51.     The next day, on August 30, 2019, Ms. Swirski sent Mr. Rauch an email in her last attempt to solve their issues regarding Ms. Swirski's role and

responsibilities when allegations are made against ProTec and ProTec's executive team members.

52. In the August 30, 2019 email, Ms. Swirski specifically requested that Mr. Rauch speak with Ms. Swirski privately instead of in front of other ProTec employees regarding any personal or professional issues he has with her.

53. This was not the first time Ms. Swirski requested Mr. Rauch bring his concerns about Ms. Swirski to her personally instead of in front of other ProTec employees, like he had done on August 2, 2016 and August 29, 2019.

54. After Mr. Rauch inadvertently sent Ms. Swirski an email on August 2, 2016 stating that she wanted attention, Ms. Swirski requested that he speak with her privately about his concerns.

55. In her August 30, 2019 email, Ms. Swirski also requested that she and Mr. Rauch discuss the issues pertaining to the former employees' complaint against ProTec.

56. Mr. Rauch responded stating that it would be best for them to meet the following Tuesday, September 3, 2019.

57. At the September 3, 2019 meeting, the executive team consisting of Mr. Rauch, Ms. Allen, and Ms. Swirski were present.

58. During this discussion between Ms. Swirski, Ms. Allen, and Mr. Rauch, Ms. Swirski reiterated the need for the executive team to stay in their respective lanes, meaning human resources would deal with human resources matters and issues.

59. Ms. Swirski made this request due in part to the fact that Ms. Swirski was often undermined from making human resources decisions since Mr. Rauch would hold meetings with Ms. Allen regarding human resources issues after Ms. Swirski would leave for the day.

60. Mr. Rauch later expressed to Ms. Swirski that he was the President of the company and all lanes were his lanes.

61.     Ms. Swirski finally had enough and was forced to resign from her position at ProTec because ProTec had created a hostile and abusive work environment.

62.     Throughout her employment with ProTec, Ms. Swirski continued to feel hostilities from other members of ProTec's executive team, causing a hostile and abusive work environment.

<u>Age Discrimination by Defendant ProTec</u>

63.     On or around January 22, 2018, ProTec's executive team met to discuss which members of the team would be trained to use DISC, which is an employee assessment tool used by Human Resources Managers.

64.     Not only is DISC commonly used by Human Resources Managers, training Human Resources Managers in DISC highly benefits the employer because it allows the Human Resources Manager to promote and improve productivity, teamwork, leadership, sales, and communication within the company.

65.     Ms. Swirski volunteered to be trained in DISC as the Human Resources Manager.

66.     Ms. Swirski knew that it would be beneficial for ProTec to train the Human Resources Manager in DISC as it is a tool that was primarily used by individuals in her same or similar position.

67.     Training Ms. Swirski in DISC would improve her ability to promote productivity, teamwork, leadership, and communication between employees at ProTec, which would be valuable to ProTec.

68.     Only three (3) employees were selected to be trained to use the DISC instrument because of the cost and training DISC requires.

69.     In response to Ms. Swirski requesting the DISC training, Ms. Allen, the Chief Financial Officer at ProTec, made a comment insinuating that the company did not want to spend the six thousand dollars ($6,000.00) it would cost to train someone if Ms. Swirski was going to leave ProTec.

70.     Ms. Allen posed this statement as a question and made it in front of ProTec's entire executive team, to point out Ms. Swirski's age.

71.     When Ms. Allen made this statement, Ms. Swirski was approximately fifty-seven years old.

72.     Ms. Swirski responded to Ms. Allen's question in front of ProTec's entire executive team by stating that such a question regarding her time at ProTec to one of the oldest individuals in the room, was inappropriate.

73.     Ms. Swirski was singled out and harassed by Ms. Allen's statement because it was made in front of Ms. Swirski's colleagues.

74.     Ms. Allen was not the only member of ProTec that felt that way about Ms. Swirski's age and future at ProTec.

75.     David Chavez ("Mr. Chavez"), a third-party consultant hired by Mr. Rauch to help with company growth and development, agreed with Ms. Allen's question regarding Ms. Swirski's length of employment at ProTec.

76.     Mr. Chavez stated that Ms. Allen's question was in fact an appropriate question to ask.

77.     On or around January 22, 2018, in further response to Ms. Allen's question at the DISC training meeting, Ms. Swirski sent an email to both Mr. Rauch and Ms. Allen stating that she had no plans to retire and intended to work for ProTec for a long time.

78.     Ms. Allen responded with "Yay!" While Mr. Henley and Mr. Adams responded with only smiley faces, Mr. Rauch ignored Ms. Swirski's email completely.

79.     Ms. Swirski did not feel that these smiley faces communicated their understanding regarding Ms. Swirski's serious concerns about her future employment status at ProTec.

80.     Ms. Swirski took a few days off of work after the passing of her husband on January 28, 2019.  Mr. Rauch was aware of the death of Ms. Swirski's

husband.

81.     On February 4, 2019, Ms. Swirski returned to work.

82.     On the day of her return, Mr. Rauch told Ms. Swirski that she should bring in her six-month-old puppy, Gunny, into the office instead of leaving her at home all day.

83.     This was not the first time Ms. Swirski was permitted by Mr. Rauch to bring her puppy into the office, but per his advice Ms. Swirski brought Gunny into the office every day after the passing of her husband.

84.     Other employees also brought their dogs into the office.

85.     Mr. Rauch informed Ms. Swirski that having dogs in the workplace was beneficial for their employees.

86.     On approximately three separate occasions, near the end of Ms. Swirski's employment at ProTec, Ms. Allen spoke with Ms. Swirski in passing and alluded to the fact that her dog would make a good therapy dog and that taking her dog to visit hospitals and retirement homes would be a good retirement job for Ms. Swirski.

87.     Ms. Swirski had no intention of retiring to visit hospitals, nursing homes and rest homes with a therapy dog as Ms. Allen suggested.

<u>Offsite Company Retreats</u>

88.     Mr. Chavez facilitated, organized, and planned offsite quarterly company retreats for ProTec.

89.     During the company retreats the employees would participate in strategic planning and organizational structure activities.

90.     At the March 2018 company retreat, Mr. Chavez asked the ProTec team members to state which position they held and where they see those positions in the future.

91.     When Ms. Swirski answered stating her position title, Mr. Chavez publicly stated in front of the entire executive team that it was unknown for how

1  long Ms. Swirski would be the Human Resources Manager at ProTec.

2  92.    Ms. Swirski was subjected to this type of unwarranted harassment in

3  front of her colleagues because she was over the age forty.

4  93.    This was not the first time that Ms. Swirski experienced this type of

5  conduct during her employment at ProTec by ProTec's high level executives.

6  <u>Ms. Swirski's Constructive Discharge</u>

7  94.    Ms. Swirski experienced public humiliation in front of her colleagues

8  because of her age, ever since Mr. Rauch's August 2, 2016 email, until Ms. Swirski

9  was left with no alternative except to resign on November 8, 2019.

10  95.    On April 4, 2018, Ms. Swirski, Ms. Allen, and Mr. Rauch had a

11  meeting in which Mr. Rauch, in front of Ms. Swirski, discussed Ms. Allen receiving

12  a raise.

13  96.    At no point during the April 4, 2018 meeting did he discuss a raise for

14  Ms. Swirski who had been working for ProTec for over four years at the time.

15  97.    After the September 3, 2019 meeting, where Ms. Swirski requested

16  that Ms. Allen and Mr. Rauch stay in their respective lanes, Ms. Swirski finally had

17  enough and was forced to resign from her position at ProTec because ProTec had

18  created a hostile and abusive work environment.

19  98.    On October 28, 2019, Ms. Swirski formally submitted her letter of

20  resignation from her position as ProTec's Human Resources Manager after

21  working there for over five years.

22  99.    Ms. Swirski felt she had no choice but to resign after having endured

23  three years of ProTec's continuous harassment due to Ms. Swirski's age, her lack

24  of adequate compensation, and ProTec's failure to take appropriate corrective

25  action.

26  100.   At the time of Ms. Swirski's resignation, she was forced to sign a form

27  with a waiver of all "work related injuries, harassment, and/or alleged

28  discriminations" in order to receive her final pay and stock options.  (A true and

accurate copy of the Notice of Employee of Change in Relationship is attached and incorporated by reference as Exhibit C).

101.   Every employee who resigned or was terminated was forced to sign the same form in order to receive their final paycheck.

102.   After Ms. Swirski's last day on November 8, 2019, Ms. Allen replaced Ms. Swirski as ProTec's Human Resources Manager.

103.   Ms. Allen is at least a decade younger than Ms. Swirski.

104.   On approximately May 8, 2020, ProTec posted a job opening on LinkedIn for a Human Resources Director, with similar duties that Ms. Swirski had performed.

105.   The duties for the May 8, 2020 Human Resources Director job opening post included the following:

      a.   Providing leadership and guidance by overseeing talent acquisition;

      b.   Functioning as a strategic, human capital business advisor to the senior management team; and

      c.   Develop initiatives, policies and programs to complement existing practices and create consistency across the organization.

106.   The potential candidate has the opportunity to make more money than Ms. Swirski for the same or similar role.

107.   ProTec is offering the potential candidate a salary anywhere from eighty thousand dollars ($80,000.00) to a hundred thousand dollars ($100,000.00), including medical, vision, dental, and retirement benefits, and stock options. (A true and accurate copy of the LinkedIn Job Posting is attached and incorporated by reference as Exhibit D).

///

///

///

///

# FIRST CAUSE OF ACTION

## Age Discrimination – Violation of ADEA

## Violation of 29 U.S.C. § 621, *et seq.*

### (Against All Defendants)

108.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

109.   The purpose of the Age Discrimination in Employment Act of 1967 is "to promote employment of older persons based on their ability rather than age, to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621.

110.   At all times herein mentioned, the ADEA, 29 U.S.C. § 621, was in full force and effect and binding on Defendant.

111.   This statute required Defendant to refrain from discriminating against any employee on the basis of age.

112.   Within the time provided under the ADEA, Plaintiff filed a Complaint against Defendant with the EEOC alleging discrimination based on age, and retaliation as prohibited by the ADEA, and received-a-right to sue letter.

113.   Age is not a bona fide occupational qualification for Plaintiff's position.

114.   Defendant has engaged in the practice of age discrimination against Plaintiff on the account of her being fifty-nine years of age, in violation of 29 U.S.C. § 621, by, among other things:

   a. During the January 22, 2018, DISC training meeting, Plaintiff was singled out due to her age. Ms. Allen, the Chief Financial Officer at ProTec, stated that the company did not want to spend the six thousand dollars ($6,000) it would cost to train an employee like Plaintiff if she was going to leave ProTec soon because she was at the age of

retirement. This inappropriate statement was then reinforced by Mr. Chavez by stating that Ms. Allen's question was in fact an appropriate question to ask. Ms. Allen's statement was made in front of the entire executive team. When Ms. Allen made this statement, Plaintiff was approximately fifty-seven years old;

b. Ms. Allen's multiple inappropriate and uncalled for remarks pertaining to Plaintiff's dog, specifically alluding to the fact that taking care of a dog is a good retirement job for Plaintiff;

c. During the March 2018 quarterly off-site company retreat, Mr. Chavez publicly announced that the length of Plaintiff's continued employment as ProTec's Human Resources Manager was unknown;

d. Ms. Allen and Mr. Rauch's constant interference with Plaintiff's ability to perform her duties even though she was more than qualified to do so; and

e. Constructively terminating her employment: ProTec's failure to prevent executive team members from making age related remarks, attempting to prevent giving Plaintiff a fair and equal opportunity to receive training to benefit her role as ProTec's Human Resources Manager, and creating intolerable working conditions that forced Plaintiff to terminate her employment, as any reasonable person would have done under the circumstances.

115. Defendant's conduct, including its continuing conduct, led to Plaintiff's constructive discharge.

116. Defendant has taken and maintained the discriminatory practices at all times relevant to the claims in this lawsuit and continues to engage in unwarranted and unlawful harassing conduct.

117. As a direct and proximate result of Defendant's discriminatory practices as described above, Plaintiff has suffered damages and continues to suffer

damages including economic losses and emotional distress, in an amount to be determined at trial.

118.   The foregoing constitutes illegal discrimination prohibited by the ADEA, 29 U.S.C. § 621.

119.   Defendant, through its officers, managing agents and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct of all of the other acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, with an evil and improper motive amounting to malice, and in conscious disregard of Plaintiff's rights, in that Defendant refused to allow Plaintiff to engage in normal work duties despite the fact that they knew that Plaintiff was able to perform the essential functions of her position and constructively terminated her employment. Thus, Plaintiff is entitled to recover punitive damages from Defendant.

120.   Plaintiff requests all relief as hereinafter described.

## SECOND CAUSE OF ACTION

### Age Discrimination - Violation of FEHA

### Violation of California Government Code § 12940, *et seq.*

### (Against All Defendants)

121.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

122.   At all times herein mentioned, the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12940, was in full force and effect and binding on Defendant.

123.   This statute required Defendant to refrain from discriminating against any employee on the basis of age.

124.   Within the time provided under FEHA, Plaintiff filed a Complaint against Defendant with the California DFEH alleging discrimination based on age,

and retaliation as prohibited by this section, and received a right-to-sue letter.

125.   Age is not a bona fide occupational qualification for Plaintiff's position.

126.   Defendant has engaged in the practice of age discrimination against Plaintiff on the account of her age, fifty-nine, in violation of FEHA, by, among other things:

    a. During the January 22, 2018, DISC training meeting, Plaintiff was singled out due to her age.  Ms. Allen, the Chief Financial Officer at ProTec, stated that the company did not want to spend the six thousand ($6,000.00) dollars it would cost to train an employee like Plaintiff if she was going to leave ProTec soon because she was at the age of retirement. Ms. Allen's statement was made in front of the entire executive team. This inappropriate statement was then reinforced by Mr. Chavez by stating that Ms. Allen's question was in fact an appropriate question to ask. When Ms. Allen made this statement, Plaintiff was approximately fifty-seven years old;

    b. Ms. Allen's multiple inappropriate and uncalled for remarks pertaining to Plaintiff's dog, specifically alluding to the fact that taking care of a dog is a good retirement job for Plaintiff;

    c. During the March 2018 quarterly off-site company retreat, Mr. Chavez publicly announced that the length of Plaintiff's continued employment as ProTec's Human Resources Manager was unknown, in front of Plaintiff's colleagues;

    d. Ms. Allen and Mr. Rauch's constant interference with Plaintiff's ability to perform her duties even though she was more than qualified to do so; and

    e. Constructively terminating her employment: ProTec's failure to prevent executive team members from making age related remarks,

attempting to prevent giving Plaintiff a fair and equal opportunity to receive training to benefit her role as ProTec's Human Resources Manager, and creating intolerable working conditions that forced Plaintiff to terminate her employment, as any reasonable person would have done under the circumstances.

127. Defendant's conduct, including its continuing conduct, led to Plaintiff's constructive discharge.

128. Defendant has taken and maintained the discriminatory practices at all times relevant to the claims in this lawsuit and continues to engage in unwarranted and unlawful harassing conduct.

129. As a direct and proximate result of Defendant's discriminatory practices as described above, Plaintiff has suffered damages and continues to suffer damages, including economic losses and emotional distress, in an amount to be determined at trial.

130. The foregoing constitutes illegal discrimination prohibited by FEHA, California Government Code § 12940(a).

131. By reason of the conduct by Defendant herein, Plaintiff has retained attorneys to prosecute her claims under FEHA. Plaintiff is therefore entitled to recover reasonable attorneys' fees and costs pursuant to California Government Code § 12965(b), in addition to other damages as provided by law and as alleged herein.

132. Defendant through its officers, managing agents and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct of all of the other the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, with an evil and improper motive amounting to malice, and in conscious disregard of Plaintiff's rights, in that Defendant refused to allow Plaintiff to engage in normal work duties despite the fact that they knew that Plaintiff was able to perform the essential functions of her position and constructively terminated

her employment. Thus, Plaintiff is entitled to recover punitive damages from Defendant.

133.   Plaintiff requests all relief as hereinafter described.

### THIRD CAUSE OF ACTION

**Hostile Work Environment – Violation of Title VII**

**Violation of 42 U.S.C. § 2000, *et seq.***

**(Against All Defendants)**

134.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

135.   Defendant's conduct, as alleged, violated Title VII of the Civil Rights Act of 1964 ("Title VII"), pursuant to 42 U.S.C. § 2000(e).

136.   Defendant committed unlawful employment practices subjecting Defendant to liability for the following:

  a.   Unwarranted harassment towards Plaintiff, which created a hostile work environment, in whole or in part on the basis of Plaintiff's age, in violation of 42 U.S.C. § 2000(e)(a); and

  b.   Attempting to prevent giving Plaintiff an equal and fair opportunity to receive DISC training due to her age, in violation of 42 U.S.C. § 2000(e).

137.   Defendant's harassing conduct includes but is not limited to Mr. Rauch's August 2, 2016 email to Plaintiff, insinuating that she may be fired if she does not do as she is told; Ms. Allen's question regarding Plaintiff's plans to stay at the company in front of the entire ProTec executive team; Mr. Chavez's statement, ultimately agreeing with Ms. Allen; and Mr. Chavez's remark and question at the March 2018 company retreat pertaining to Plaintiff's employment status at ProTec.

138.   When each of the above statements was made, Plaintiff was over the

age of forty years old.

139.   Plaintiff was made to feel as though she was not entitled to the DISC training and that the future of her career and employment at ProTec were in danger due to her age.

140.   Defendant failed and refused to remedy this hostile work environment and permitted Plaintiff to be harassed by executive team members on account of her age.

141.   The unlawful conduct alleged above was engaged in by Defendant and other executive members at ProTec, who were acting on behalf of ProTec, at all times relevant to this Complaint within the scope and course of their employment.

142.   Such harassment was so severe and pervasive that it altered the conditions of Plaintiff's employment, creating a hostile, abusive work environment and thereby endangering Plaintiff's physical and mental health and making her working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

143.   As a direct and legal result of Defendant's and its officers, managing agents and/or its supervisors' conduct, Plaintiff has suffered and continues to suffer consequential and special damages, including but not limited to substantial losses in earnings, other employment benefits, as well as emotional distress damages, and attorneys' fees, in the amount according to proof at trial.

144.   Said actions by Defendant justify the imposition of punitive damages in that the actions were against public policy. Defendant committed the acts alleged herein maliciously, fraudulent and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.

///

///

///

///

## **FOURTH CAUSE OF ACTION**

### **Hostile Work Environment – Violation of FEHA**

### **Violation of California Government Code § 12940,** *et seq.*

### **(Against All Defendants)**

145.    Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

146.    Defendant's conduct, as alleged, violated FEHA, California Government Code § 12940(a).

147.    Defendant committed unlawful employment practices subjecting Defendant to liability for the following:

> a.  Unwarranted harassment toward Plaintiff, which created a hostile work environment, in whole or in part on the basis of Plaintiff's age in violation of California Government Code § 12940(j); and
>
> b.  Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on age, in violation of California Government Code § 12940(k).

148.    Defendant's harassing conduct includes but is not limited to Mr. Rauch's August 2, 2016 email to Plaintiff, insinuating that she may be fired; Ms. Allen's question regarding Plaintiff's plans to stay at the company, in front of the entire ProTec executive team; Mr. Chavez's statement, ultimately agreeing with Ms. Allen; and Mr. Chavez's remark and question at the March 2018 company retreat pertaining to Plaintiff's continued employment status at ProTec.

149.    When each of the above statements was made, Plaintiff was over the age of forty years old.

150.    Plaintiff was made to feel as though she was not entitled to the DISC training, and the future of her career and employment at ProTec were in danger due

to her age.

151.   Defendant failed and refused to remedy this hostile work environment and permitted Plaintiff to be harassed by executive team members on account of her age.

152.   The unlawful conduct alleged above was engaged in by Defendant and other executive members at ProTec, who were acting on behalf of ProTec, at all times relevant to this Complaint within the scope and course of their employment.

153.   Such harassment was so severe and pervasive that it altered the conditions of Plaintiff's employment, creating a hostile, abusive work environment, thereby endangering Plaintiff's physical and mental health and making her working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

154.   As a direct and legal result of Defendant's and its officers, managing agents and/or its supervisors' conduct, Plaintiff has suffered and continues to suffer consequential and special damages, including but not limited to substantial losses in earnings, other employment benefits, as well as emotional distress damages, and attorneys' fees, all to her damage in the amount according to proof at trial.

155.   Said actions by Defendant justify the imposition of punitive damages in that the actions were against public policy. Defendant committed the acts alleged herein maliciously, fraudulent and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.

## FIFTH CAUSE OF ACTION

### Retaliation – Violation of Title VII

### Violation of 42 U.S.C. § 2000, *et seq*.

### (Against All Defendants)

156.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these

paragraphs were set forth in full herein.

157.   Title VII, 42 U.S.C. § 2000(e)-3, provides that "it shall be unlawful employment practices for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter."

158.   At all relevant times hereto, Title VII, 42 U.S.C. § 2000 was in full force and effect and was binding on Defendant.

159.   Said statue required Defendant, and its employees and agents, to refrain from retaliating against any employee because of their age.

160.   Notwithstanding the statutory prohibition against retaliation contained in 42 U.S.C. § 2000, Defendant retaliated against Plaintiff by imposing the foregoing enumerated adverse employment actions against her.

161.   Among other things, Plaintiff was subject to retaliation because of Plaintiff's complaints about discrimination and hostile work environment, withholding from Plaintiff the fair and equal opportunity of receiving training without personal investigation into her employment future at ProTec and giving her no other alternative but to resign.

162.   Specific retaliatory conduct by Defendant included:

    a.   The President and Chief Executive Officer of ProTec, Mr. Rauch personally and inadvertently sent Plaintiff an email on August 2, 2016, insinuating Plaintiff would be fired from ProTec if she did not do as she was asked. This email was sent in response to Plaintiff's attempt to promote leadership at ProTec by sending an inspirational quote to other employees;

    b.   Requesting and volunteering for training using DISC at a ProTec team meeting on January 22, 2018 but was subsequently ridiculed and questioned by Ms. Allen and Mr. Chavez as to her length of employment at ProTec because of her age;

c. Mr. Chavez's statements at the March 2018 company retreat in front of Plaintiff and ProTec's entire executive team, stating that Plaintiff's employment and future at ProTec was unknown; and

d. Inadequate compensation based on Plaintiff's overqualifications for her job as Human Resources Manager and then ProTec's subsequent conduct of posting a job listing several months after Plaintiff's forced departure offering a potential candidate a much higher salary for Plaintiff's old job.

163. Defendant's violation of Plaintiff's statutory and constitutional rights is inconsistent with and hostile to the public's interest in asserting rights and has a chilling effect on such protected activity.

164. Defendant's arguments for denying reasonable accommodation and discharging Plaintiff is pretextual in nature and calculated to disguise the motivating basis of the adverse employment action to which Plaintiff was subjected.

165. As a direct and legal result of Defendant's and its officers, managing agents and/or its supervisors' conduct, Plaintiff has suffered and continues to suffer consequential and special damages, including but not limited to substantial losses in earnings, other employment benefits, as well as emotional distress damages, and attorneys' fees, all to her damage in the amount according to proof at trial.

166. Said actions by Defendant justify the imposition of punitive damages in that the actions were against public policy. Defendant committed the acts alleged herein maliciously, fraudulent and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.

///

///

///

///

///

## SIXTH CAUSE OF ACTION

### Retaliation – Violation of FEHA

### Violation of California Government Code § 12940(h)

### (Against All Defendants)

167.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

168.   Defendant retaliated against Plaintiff because she opposed discrimination in the workplace by Defendant engaging in a course of conduct in violation of California Government Code § 12940(h).

169.   At all times material hereto, Defendant was prohibited from retaliating against employees who oppose practices forbidden by FEHA and who engage in protected activity.

170.   Among other things, Plaintiff was subject to retaliation because of Plaintiff's complaints about discrimination and hostile work environment, withholding from Plaintiff the fair and equal opportunity of receiving training without personal investigation into her employment future at ProTec and forcing her to quit.

171.   Specific retaliatory conduct by Defendant included:

    a.  The President and Chief Executive Officer of ProTec, Mr. Rauch personally and inadvertently sent Plaintiff an email on August 2, 2016, insinuating Plaintiff would be fired from ProTec if she did not do as she was asked. This email was sent in response to Plaintiff's attempt to promote leadership at ProTec by sending an inspirational quote to other employees;

    b.  Requesting and volunteering for training using DISC at a ProTec team meeting on January 22, 2018 but was subsequently ridiculed

and questioned by Ms. Allen and Mr. Chavez as to her length of employment at ProTec because of her age;

c. Mr. Chavez's statements at the March 2018 company retreat in front of Plaintiff and ProTec's entire executive team, stating that Plaintiff's employment and future at ProTec was unknown; and

d. Inadequate compensation based on Plaintiff's overqualifications for her job as Human Resources Manager at ProTec and then posting a job listing several months after Plaintiff's departure offering a potential candidate the opportunity for a much higher salary.

172. Such conduct as described herein violates FEHA, California Government Code § 12940(h), which makes it unlawful to discriminate against an employee because she has opposed discriminatory practices.

173. As a direct and proximate result of Defendant's discriminatory practices as described above, Plaintiff has suffered damages and continues to suffer damages including economic losses and emotional distress, in an amount to be determined at trial.

174. As a further direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of peace of mind and future security, and has suffered embarrassment, humiliation, mental and emotional pain and distress and discomfort, all to her detriment and damage in amounts not fully ascertained but within the jurisdiction of this Court and subject to proof at the time of trial.

175. By reason of Defendant's conduct herein, Plaintiff has retained attorneys to prosecute her claims under FEHA. Plaintiff is therefore entitled to recover reasonable attorneys' fees and costs pursuant to California Government Code § 12965(b), in addition to other damages as provided by law and as alleged herein.

176. Defendant through its officers, managing agents and/or its supervisors,

authorized, condoned and/or ratified the unlawful conduct of all of the other the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, with an evil and improper motive amounting to malice, and in conscious disregard of Plaintiff's rights, in that Defendant refused to allow Plaintiff to engage in normal work duties despite the fact that they knew that Plaintiff was able to perform the essential functions of her position and constructively terminated her employment. Thus, Plaintiff is entitled to recover punitive damages from Defendant.

177. Plaintiff requests all relief as hereinafter described.

## SEVENTH CAUSE OF ACTION

### Wrongful Discharge
### Violation of Public Policy
### (Against All Defendants)

178. Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

179. Plaintiff was employed by Defendant since January 2014.

180. Plaintiff was subjected to working conditions at ProTec that violated California public policy, specifically, as alleged above, Defendant subjected Plaintiff to a conscious, systematic, and uncorrected course of age discrimination and retaliation for asserting her feelings about age discrimination and the hostile work environment.

181. ProTec intentionally engaged in conduct subjecting Plaintiff to age discrimination as evidenced by Mr. Rauch's email and comments insinuating Plaintiff was nearing retirement age and that her future at ProTec could be ending soon; Ms. Allen's personal inquiry into Plaintiff's length of employment at ProTec due to her age, thus withholding from her the same opportunities as other employees; and Mr. Chavez's comments in front of other ProTec employees stating

that Plaintiff's length of continued employment at ProTec was unknown.

182.   Plaintiff's refusal to allow ProTec executive members to engage in conduct that created a hostile work environment for others, which was not only part of her job but it was also on account of her inability to work in an environment in which she subjected to unwarranted harassment due to her age, is protected activity.

183.   Defendant's unlawful conduct was so intolerable that a reasonable person in Plaintiff's position would have no reasonable alternative, except to resign.

184.   As alleged above, Plaintiff gave Defendant the opportunity to correct their intolerable discriminatory and retaliatory conduct and gave Defendant a chance to make good on both Ms. Allen's remarks on January 22, 2018 and Mr. Rauch's email on August 2, 2016, yet Defendant ignored and continued to make the same or similar comments, subjecting Plaintiff to intolerable discriminatory and retaliatory working conditions.

185.   Plaintiff was harmed by Defendant's conduct, including the intolerable working conditions that forced her to resign and lose her wages.

186.   The intolerable working conditions described above were a substantial factor in causing Plaintiff's harm.

187.   Defendant through its officers, managing agents and/or its supervisors, authorized, condoned and/or ratified the intentional, malicious or grossly negligent and reckless conduct, which caused the intolerable working conditions and the harm that Plaintiff was subjected to, which justifies an award of punitive damages.

## EIGHTH CAUSE OF ACTION

### Failure to Prevent Retaliation – Violation of FEHA

### Violation of California Government Code § 12940, *et seq*.

### (Against All Defendants)

188.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

189.   Plaintiff was subjected to discrimination based on her age. As set forth above, Plaintiff requested to be trained in using DISC which was to be integrated in ProTec's workplace to improve productivity, teamwork, leadership, sales, and communication.

190.   Training in using DISC was crucial to enhancing Plaintiff's ability to perform her job duties as ProTec's Human Resources Manager.

191.   Instead of allowing Plaintiff a fair and equal opportunity to get DISC training outright, Ms. Allen and Mr. Chavez instead made inappropriate remarks pertaining to Plaintiff's age as they believed she could and should retire.

192.   Plaintiff reasonably felt that she was not entitled to DISC training and that the future of her career and employment at ProTec was in danger because of her age.

193.   ProTec failed to take all reasonable steps to prevent age discrimination against Plaintiff.

194.   Moreover, on August 2, 2016, Mr. Rauch sent an email to Plaintiff and other ProTec employees that specifically questioned Plaintiff's employment future at ProTec by stating that she would be fired if she did not do as she was asked.

195.   Even after Plaintiff complained to Mr. Rauch and Ms. Allen about the inappropriate email that was inadvertently sent to Plaintiff on August 2, 2016, nothing was done to mitigate the repulsive behavior of ProTec's executive team members.

196.   Subsequently increasing Plaintiff's salary one month after Mr. Rauch inappropriately and inadvertently sent a disrespectful email to Plaintiff does not constitute prevention under FEHA, California Government Code § 12940.

197.   Therefore, the conduct by ProTec's executive team members and employees continued through Plaintiff's employment, making the workplace intolerable, giving Plaintiff no other option but to resign.

198.   As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages, including economic losses and emotional distress, in an amount to be determined at trial.

199.   Defendant's actions were willful, malicious, and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

200.   Defendant, through its officers, managing agents and/or its supervisors, authorized, condoned, and/or ratified the unlawful conduct of all of the other Defendants named in this action. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum according to proof at trial.

## NINTH CAUSE OF ACTION

**Failure to Prevent Harassment – Violation of FEHA**

**Violation of California Government Code § 12940**

**(Against All Defendants)**

201.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

202.   On or around January 22, 2018, ProTec's executive team met to discuss which members of the team would be trained to use DISC, which is an employee assessment tool used by Human Resources Managers.

203.   Not only is DISC commonly used by Human Resources Managers, training Human Resources Managers in DISC highly benefits the employer because it allows the Human Resources Manager to promote and improve productivity, teamwork, leadership, sales, and communication within the company.

204.   As set forth above, Plaintiff requested to be trained in using DISC as the Human Resources Manager. Plaintiff knew that it would be beneficial for ProTec to train the Human Resources Manager in a tool that is primarily used by

individuals in her same or similar position.

205.   Instead of encouraging Plaintiff to have a fair and equal opportunity to receive DISC training, Plaintiff was subject to discrimination based on her age.

206.   The age discrimination against Plaintiff occurred when Ms. Allen and Mr. Chavez made inappropriate remarks pertaining to her reaching retirement age.

207.   Specifically, Ms. Allen questioned, in front of ProTec's entire executive team, including Plaintiff, Plaintiff's employment future at ProTec prior to allowing her to be trained in using DISC because of Plaintiff's age.

208.   Additionally, in March 2018, Mr. Chavez made a comment in front of ProTec's entire executive team questioning Plaintiff's employment future at ProTec.

209.   Based on these comments, Plaintiff reasonably felt that she was not entitled to DISC training and that the future of her career and employment at ProTec was in danger because of her age.

210.   ProTec failed to take all reasonable steps to prevent age discrimination against Plaintiff.

211.   Even after Plaintiff complained to Mr. Rauch and Ms. Allen about the inappropriate email that was inadvertently sent from Mr. Rauch to Plaintiff on August 2, 2016, nothing was done to mitigate the repulsive behavior of ProTec's executive team members.

212.   The conduct by ProTec's executive team members and employees continued through Plaintiff's employment, making the workplace intolerable, giving Plaintiff no other choice but to resign.

213.   Subsequently increasing Plaintiff's salary one month after Mr. Rauch inappropriately and inadvertently sent a disrespectful email to Plaintiff does not constitute prevention under this Code.

214.   As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages, including economic losses and emotional distress, in

an amount to be determined at trial.

215.   Defendant's actions were willful, malicious, and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

216.   Defendant, through its officers, managing agents and/or its supervisors, authorized, condoned, and/or ratified the unlawful conduct of all of the other Defendants named in this action. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum according to proof at trial.

## TENTH CAUSE OF ACTION

### Unfair Business Practices

### Violation of Business & Professional Code § 17200 *et seq.*

### (Against All Defendants)

217.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

218.   California Business and Professions Code § 17200 *et seq.*, prohibits acts of unfair competition, which means and includes any "fraudulent act or practice" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of California Business and Professions Code § 17200 *et seq.*

219.   Defendant's conduct as alleged herein has been unfair, unlawful, and deleterious to Plaintiff. Plaintiff hereby seeks to enforce important rights within the meaning of California Code of Civil Procedure § 1021.5.

220.   Plaintiff is a "person" within the meaning of California Business and Professions Code § 17204, and therefore possesses standing to seek restitution.

221.   It is the policy of California to enforce minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect those employees who comply with the law from

losing competitive advantage to their employers who fail to comply with labor standards and requirements.

222.   Specifically, without limitation, not giving Plaintiff a fair and equal opportunity to receive DISC training because of her age, and harassing, humiliating, and embarrassing Plaintiff in front of her colleagues, were deceptive business practices within the meaning of California Business and Professions Code § 17200 *et seq*.

223.   Through the conduct alleged herein, Defendant acted contrary to these public policies and has engaged in unlawful and/or unfair business practices in violation of Business and Professions Code § 17200, *et seq.*, depriving Plaintiff the rights, benefits, and privileges guaranteed to employees under California law.

224.   The acts, omissions, misrepresentations, practices, and disclosures of Defendant ProTec and its representatives hereinabove caused substantial harm to Plaintiff.

225.   Under California Business and Professions Code § 17203, Plaintiff is entitled to obtain restitution from Defendant.

226.   As a direct and proximate cause of the unlawful, unfair, and fraudulent acts, practices, and omissions of Defendant ProTec, Plaintiff has suffered and continues to suffer damages, including economic losses and emotional distress, in an amount to be determined at trial.

227.   Defendant, through its officers, managing agents and/or its supervisors, authorized, condoned, and/or ratified the unlawful conduct of all of the other Defendants named in this action. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum according to proof at trial.

///

///

///

1    ///

## ELEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

228.    Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

229.    The conduct complained of hereinabove by Defendant and through its officers, managing agents and/or its supervisors including but not limited to ProTec's President and Chief Executive Officer, Mr. Rauch, ProTec's Chief Financial Officer, Ms. Allen, and ProTec's third-party consultant, Mr. Chavez, was outside the conduct expected to exist in the workplace, was intentional and malicious, and was done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress. Defendant's conduct in conforming and ratifying the complained-of conduct, was done with the knowledge that Plaintiff's emotional and physical distress would thereby increase and was done with wanton and reckless disregard of the consequences to Plaintiff.

230.    ProTec's intentional conduct toward Plaintiff as detailed hereinabove was so extreme and outrageous that no reasonable person should be subject to endure it and suffer the resulting harm as Plaintiff did.

231.    Such extreme and outrageous conduct includes:

a. Publicly harassing Plaintiff in front of her colleagues on multiple occasions, specifically, among other instances, Mr. Chavez's announcement at the March 2018 company retreat stating that Plaintiff's employment future at ProTec was unknown.

b. Ms. Allen's similar remarks made at the January 22, 2018, DISC training meeting in front of ProTec's entire executive team.

c. Mr. Rauch's email to Plaintiff and Mr. Henley stating that

"Coworkers who don't listen to (and do) what their boss asks them to will soon be looking for another job."

232.   Defendant has exhibited utter disregard for Plaintiff's well-being by failing to implement policies and practices to deter discrimination and harassment in the workplace, allowing Defendant's employees to make inappropriate public remarks about Plaintiff's employment status at ProTec in front of other ProTec employees without repercussions and exposing Plaintiff to a workplace wherein harassment and age discrimination were permissible.

233.   As a result of the acts and omissions by Defendant, as alleged in this Complaint, Plaintiff has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and health. As a result of said distress and consequent harm, Plaintiff has suffered such damages in an amount according to proof at time of trial.

234.   Defendant through its officers, managing agents and/or its supervisors, engaged in conduct hereinabove alleged, maliciously, oppressively, and with reckless disregard of Plaintiff's rights and safety, thereby entitling Plaintiff to an award of punitive damages. Defendant authorized, ratified, and knew of the wrongful conduct complained of herein but failed to take immediate and appropriate corrective action to remedy the situation, and thereby acted fraudulently, maliciously, oppressively, and with reckless disregard of Plaintiff's rights.

235.   Plaintiff requests all relief as hereinafter described.

## TWELFTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### (Against all Defendants)

236.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

**COMPLAINT FOR DAMAGES**

237.   In the alternative, if said conduct of Defendant and its officers, agents and supervisors was not intentional but was negligent, Plaintiff is thereby entitled to general damages for negligent infliction of emotional distress.

238.   Defendant ProTec and its officers, agents, and employees, including but not limited to ProTec's President and Chief Executive Officer, Mr. Rauch, ProTec's Chief Financial Officer, Ms. Allen, and ProTec's third-party consultant, Mr. Chavez, participated in the following conduct that caused Plaintiff serious emotional distress:

   a.   On August 2, 2016, Mr. Rauch sent Plaintiff an email that was not meant for her stating that Plaintiff would be fired if she did not listen to her supervisors;

   b.   On January 22, 2018, Ms. Allen questioned, in front of ProTec's entire executive team, including Plaintiff, Plaintiff's employment future at ProTec prior to allowing her to be trained in using DISC because of Plaintiff's age; and

   c.   In March 2018, Mr. Chavez made a comment in front of ProTec's entire executive team questioning Plaintiff's employment future at ProTec.

239.   Plaintiff was in shock after receiving the August 2, 2016, email from her boss, Mr. Rauch, insinuating that her employment future was limited at ProTec, after she had already worked there for over two years.

240.   Due to Mr. Rauch's email, Plaintiff was concerned with her job security and was in constant fear that her boss—the President of the company she was working for—was negatively talking about her to her colleagues behind her back.

241.   Ms. Allen's comment was made in front of Plaintiff's colleagues, and due to the fact that Plaintiff believed the training would benefit her job and ProTec, she did not understand why training her to use DISC was even questioned.

242.   Not only did Ms. Allen's comment continue to make Plaintiff doubt her future at ProTec, but it also gave her colleagues the impression that she would not be at ProTec much longer.

243.   After Ms. Allen's comments, Mr. Chavez made a similar comment in front of the same people.

244.   Due to the close timeframe between Ms. Allen's and Mr. Chavez's comments, Plaintiff started to become paranoid believing that executive team members were transpiring against her to ultimately remove her from her position at ProTec.

245.   By exposing Plaintiff to an intolerable and emotionally draining workplace wherein ProTec interfered with Plaintiff's ability to adequately perform her job duties, ProTec abused their positions of authority toward Plaintiff and breached a duty owed to Plaintiff to provide her with a workplace free of discrimination, unfair treatment, and retaliation.

246.   ProTec's conduct, as alleged hereinabove, exceeds the inherent threat of employment and was not the sort of conduct normally expected to occur in the workplace.

247.   As a result of ProTec's negligent conduct, Plaintiff was harmed.

248.   As a direct and proximate result of ProTec's negligent behavior, Plaintiff suffered severe and extreme mental and emotional distress, including but not limited to anguish, humiliation, embarrassment, loss of confidence, fright, depression, and anxiety, the exact nature and extent of which are not now known to her.

249.   Plaintiff requests all relief as hereinafter described

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief and judgment against Defendants as follows:

1.   Actual damages according to proof at trial;

2.     Punitive damages to punish, deter and make an example of Defendants;

3.     Compensatory damages for pain, suffering, emotional distress, psychological harm, and other injuries, subject to proof, suffered as a result of the tortious conduct of Defendants;

4.     Reasonable attorneys' fees pursuant to California Government Code § 12900, *et seq.*;

5.     For costs of suit incurred herein; and

6.     For such other and further relief as this Court deems just and proper.


Dated: July 13, 2020                Respectfully submitted:


                                    SLATE LAW GROUP


                                    By: */s/ Kelly E. DuFord*
                                    KELLY E. DUFORD
                                    MICHAEL H. WEINER
                                    Attorneys for Plaintiff LAURA SWIRSKI

# DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all claims so triable.

Dated: July 13, 2020

Respectfully submitted:

SLATE LAW GROUP

By: _/s/ Kelly E. DuFord_
KELLY E. DUFORD
MICHAEL H. WEINER
Attorneys for Plaintiff LAURA SWIRSKI